R. E. ROPER, Appellant, v. F. C. WELLS, Appellee.

**SALES:** Rescission—Breach of Warranty—Waiver by use of Article. Use of an article by the buyer for a *reasonable* time after the seller has made alterations in the effort to make the article comply with a warranty, does not work a waiver of the buyer's right to rescind for breach of the warranty when *use was necessary* in order to determine the efficacy of such alterations. So held as to a heating plant.

*Appeal from Wright District Court.*—WM. THEOPHILUS, Judge.

DECEMBER 18, 1917.

ACTION to recover the purchase price of a certain heating plant and to foreclose a mechanics' lien thereon. Judgment and decree for the defendant in the court below, dismissing plaintiff's petition.—*Affirmed.*

*McGrath & Archerd,* for appellant.

*J. W. Henneberry,* for appellee.

SALES: rescission: breach of warranty: waiver by use of article.

GAYNOR, C. J.—The plaintiff sold defendant a heating plant for defendant's home, and guaranteed it to work to the satisfaction of the defendant. This action was brought to recover the purchase price,

and to foreclose a mechanics' lien. Defendant pleaded a warranty and a breach thereof, and in a' cross-petition asked a decree rescinding the contract on account of the breach of the warranty. Plaintiff pleaded a waiver and an estoppel, alleging that, after the defendant had served a notice of his intention to rescind on account of the breach of the warranty, he continued to use the plant for the purpose of heating his house, and that by reason thereof he is now barred and estopped from having or claiming any right to rescind. The cause was tried to the court, and a judgment and decree entered for the defendant, dismissing plaintiff's petition. Plaintiff appeals.

In the appeal, plaintiff presents but one question for our consideration, and says the court erred in holding that the use of the plant by the defendant, as shown by the undisputed evidence, did not operate as a waiver of his right to rescind, and did not estop him from now insisting on a rescission; that the court erred in holding that the use of the plant, after the commencement of the action, did not preclude defendant from claiming a rescission.

It appears that the plant was installed in defendant's home on the 30th day of November, 1912; that the defendant used it for the purpose of heating his home during that winter; and that it did not work satisfactorily—did not heat the house as plaintiff guaranteed it would; that plaintiff's attention was called to this fact, and plaintiff sought to remedy the condition complained of and to make the plant comply with the warranty; that he failed in this; that again the following winter, the same trouble appeared, and efforts were made by the plaintiff to remedy it, and in the winter of 1915, the heating plant was still found insufficient to meet the requirements of the warranty; that plaintiff again attempted to remedy it, and to make it comply with the warranty, but failed; that, on the 23rd

day of January, 1915, defendant served upon the plaintiff the following notice:

"Gentlemen: You are hereby notified that the hot water heating plant you placed in my residence in Eagle Grove, Iowa, is not satisfactory in any way; that it is not up to the guaranty under which I permitted you to put it in and does not give the service which was garanteed by you. It does not heat the house; it burns more than a normal amount of coal and gives less than a normal amount of heat. I have tried both hard and soft coal and have subjected it to every test required or even suggested by you, and it is still and always has been unsatisfactory. Unless you can make this plant do the work and give the service guaranteed by you within a reasonable time from the service of this notice, I will ask you to remove it from my house. I am now and always have been able, ready and willing to pay for this plant whenever it gives the guaranteed service but I must refuse to pay for it in the condition it is now and always has been. You will please govern yourself accordingly."

Immediately after the service of this notice, plaintiff put in 30 or 40 feet of additional radiation. Plaintiff testifies:

"After I received this notice I took further steps to make the matter satisfactory. I added 40 feet of radiation to the plant. I did that to see if I could get a satisfactory and peaceable settlement. I did not do it because I thought the plant was not up to the guaranty. I knew from our test that they did not have radiation enough in there to heat the house. The last test I made was on the 24th day of January, 1915."

The record discloses that the heating plant did not, after this additional radiation was placed, prove satisfactory or furnish sufficient heat for the purposes for which

the heating plant was installed, and did not meet the requirements of the guaranty.

Plaintiff failed to remove the plant, although tests made thereafter demonstrated the insufficiency of the plant to meet the requirements of the contract. The plant remained in the house, and left the defendant with no alternative but to submit to its presence. It is claimed that the defendant used it after this notice was served, and after an ineffectual effort had been made by the plaintiff to make it comply with the warranty. It is upon this that plaintiff bases his claim of waiver or estoppel. In his argument, plaintiff concretely states his contention in this language:

"Mr. Roper's position is that, after Mr. Wells served his notice of rescission, and after Mr. Roper had, to the knowledge of Mr. Wells, abandoned all effort to satisfy him, and after Mr. Roper had commenced this lawsuit in February, 1915, Mr. Wells continued to use the plant that winter, and is now estopped to claim rescission."

It appears that, after this notice, hereinbefore set out, was served on the plaintiff, and after plaintiff had made an effort to remedy the plant and make it comply with the warranty, the defendant left the place and rented it to his brother. It does not appear from this record when the defendant left the premises, and it does not appear that the brother used this heating plant after he obtained possession of the house. This suit was tried in October, 1915. The plant was then in the house. It was commenced in February, 1915.

The claim of the plaintiff is that the act of the defendant in continuing to use the plant after he had served notice of rescission on the plaintiff, constitutes such an acceptance of the plant in its defective condition that he is now estopped to claim or have a right of rescission. It seems to be the thought of the plaintiff that the defendant had a right to rescind at the time he served his notice, and that

this right rested on the fact that the plaintiff had not complied with his contract in installing a plant such as, under his contract, he was required to install; but that the defendant, having used the plant, with knowledge of its defective condition, after he had served notice of his election to rescind the contract, is now estopped to insist upon a rescission. The burden is on the plaintiff to prove the facts that constitute an estoppel. It appears that, after the notice of rescission was served on the plaintiff, he was given an opportunity to make good his contract, and was permitted by the defendant to make some efforts in that direction; that his efforts were unavailing. Whether or not he had succeeded could not be determined except by testing the plant after it had the added radiation. It appears that this test was made, and that the plant proved inefficient, with the added radiation, to make it comply with the requirements of plaintiff's contract. How long the defendant used it after this effort does not affirmatively appear. He would have a right to use it a reasonable time at least, to test the efficiency of the remedy to make the plant comply with the contract. That he made this test is not a matter of which the plaintiff can complain. Thereafter, the defendant abandoned the premises and rented the house to his brother. How long the defendant used the heating plant after this effort on the part of the plaintiff to remedy it, does not appear. We cannot assume that he used it an unreasonable time, or more than was necessary to make a fair test of its efficiency. He then abandoned the house and rented it to his brother. The heating plant remained in the house, but there is no evidence that it was used by the brother after he assumed possession. The conduct of the defendant could not, therefore, constitute a waiver of his rescission, nor would his effort to test the efficiency of the plant, after the plaintiff had sought to make it comply with his contract, estop him to insist upon

the original rescission in writing. When the plaintiff undertook to install in defendant's home this heating system, and agreed with the defendant to make it satisfactory, and to make it perform efficiently the purposes for which the heating plant was purchased and intended to be used,—upon its failure to perform these purposes,—after full opportunity given the plaintiff to remedy the defects in the system and make it perform the purposes,—the defendant was no longer bound to retain it or pay for it. The plaintiff, having placed it in the building under the pretense that it would be satisfactory and give satisfactory service, was legally bound to remedy it upon notice from the defendant of the fact that it did not perform the services contemplated by the agreement; and, when he received notice from the defendant to remove it, the mere fact that he permitted it to remain there could not add to his rights. The written notice was a tender and a rescission, which vested plaintiff with the right to remove the plant from the premises; and he could not, by refusing to accept the written tender and refusing the plant, force it upon the defendant and require the defendant to pay the price.

It is assumed in argument that the defendant used this plant in the fall of 1915, or that his brother used it in the fall, after he had obtained possession. The only evidence on this point is given by the defendant, and it is this:

"I used it up to the time I left the house." When he left it does not appear. "I have rented the house to my brother." When he rented the house to his brother does not appear. He said, "I am not living in the house now. I rented it to my brother. The furnace is still there." He was asked this question: "He is using it, isn't he? A. No, sir. Q. You used it up to the time you left the house: that is, when the weather was cold enough to require its use? A. I used it last winter,"—meaning the winter of 1915.

This evidence does not indicate that the defendant used it more than a reasonable time after the plaintiff had made an effort to remedy the defects in the heating plant to make it comply with his contract. In fact, it does not definitely state or show that he used it at all, after he served the notice upon plaintiff of the rescission. We may assume, however, that the defendant used the plant in the winter after the plaintiff had sought to remedy it, but the evidence does not show that he used it longer than was reasonably necessary to determine whether the added radiation, or the effort of the plaintiff to remedy the defects in the plant, had brought it up to the requirements of the contract. We cannot say that the use of the plant by the defendant, after the service of this notice, indicates a purpose on his part to accept the plant in its defective condition, or that he used the plant to such an extent that he is now estopped to rely upon the rescission made in his written notice.

The facts of this case do not bring it within the rules relied upon by the plaintiff. The plaintiff cites and relies upon *Rice v. Friend Bros. Co.*, 179 Iowa 355. In that case, the plaintiff sold to the defendant certain roof paints. Action was brought to recover the agreed price. The paint was sold under guaranty or warranty. It was held that defendants had a reasonable time within which they might test the paint, and use so much of it as was necessary for that purpose. They did use it, and, as early as July, 1909, definitely rejected the entire lot, or attempted to do so, by the written notice of that date. After that, they could not deal with the property in any way *inconsistent* with the rejection, if they proposed to rely on their right to reject.

That law is fundamental. In the case at bar, however, it is conceded, for the purposes of this review, that the plaintiff did not comply with the guaranty; that, each winter, plaintiff sought to remedy the heating plant and

make it comply. There was an implied invitation extended
to the defendant to retain it while these efforts were being
used to make it comply with the requirements of the con-
tract. Each winter, it was found insufficient. Each winter,
defendant protested. Each winter, an effort was made to
remedy it. In the winter of 1915, the notice hereinbefore
set out was served. Plaintiff, admitting its inefficiency to
fulfill the requirements of the contract, attempted to make
it do so. He made some alterations and added some more
radiation. Defendant then, without any express purpose
to recede from his rescission as expressed in the writing,
tested it to see whether it was made to comply with the
contract. The test proved that it was not. This test was
made, unquestionably, upon an implied invitation of the
defendant to do so. In no other way could it be determined
whether plaintiff had then remedied the defects and made
the plant comply with the contract. He failed. The record
does not definitely show that, after this effort was made, the
defendant used it more than was reasonably necessary to
test it. The burden is on the plaintiff to show the facts
upon which he bases his estoppel. He has failed to do this.
The plant is there, placed there by the plaintiff, and tendered
back at the place where it was delivered. It does not, and
cannot by any efforts of the plaintiff be made to, fulfill the
requirements of the warranty. In the written notice, plain-
tiff was invited to remove it. He cannot complain of the de-
fendant's conduct, nor insist that the conduct, as disclosed
by this record, indicates a purpose on the part of the defend-
tan to accept the plant in its defective condition, and waive
the warranty. Nor can it be said that he is now estopped,
under any theory of estoppel, from asserting his right to
rescind the contract and to be relieved of the obligation
to pay; or that his use was inconsistent with his right to
reject, and rely upon the rescission made in the written
notice hereinbefore set out.

Upon the whole record, we find no reason for inter-fering with the judgment of the court, and the cause is— *Affirmed.*

LADD, EVANS, and SALINGER, JJ., concur.